```
___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
              COUNSEL/PARTIES OF RECORD

         MAR 1 5 2011

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CENTER OF HOPE CHRISTIAN FELLOWSHIP, LOCAL, CHURCH OF GOD IN CHRIST, | ) ) ) ) |
| Plaintiff, | ) 3:11-cv-00173-RCJ-VPC ) |
| vs. | ) ORDER ) |
| WELLS FARGO BANK NEVADA, N.A. et al., | ) ) |
| Defendants. | ) ) |

This case arises out of the foreclosure of a church's mortgage. The Court has granted a temporary restraining order and scheduled a preliminary injunction hearing. The current beneficiary of the mortgage has also filed a motion to dismiss. For the reasons given herein, the Court extends the temporary restraining order and denies the motion to dismiss.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff Center of Hope Christian Fellowship, Local, Church of God in Christ gave lender Wells Fargo Bank Nevada, N.A. ("Wells Fargo") a $500,000 promissory note (the "Note"), secured by a deed of trust ("DOT"), to purchase real property at 1327 Pyramid Way, Sparks, NV 89431 (the "Property"). (*See* Note 1, Feb. 21, 2002, ECF No. 1-2, at 12; DOT, Feb. 21, 2002, ECF No. 1-2, at 22). The Note was a fifty-eight-month, fixed-rate note at 7.5%, with fifty-seven regular monthly payments of $4635 and a final balloon payment estimated at

$403,757.59 due on January 1, 2007. (*See* Note 1). Any dispute over the Note is arbitrable on demand of either party. (*See* Note 3). The trustee under the DOT was American Securities Company of Nevada ("ASCN"). (DOT 1). Any dispute over the DOT is also arbitrable on demand of either party. (*See* DOT 6).

The actual amount due on January 1, 2007 was $399,463.09, slightly less than anticipated. (Compl. ¶ 12, Feb. 22, 2011, ECF No. 1-1, at 2). It is not clear if or when Plaintiff defaulted on the original Note, but Plaintiff alleges, "[p]rior to the payment of the balloon payment [which was due January 1, 2007] and pursuant to the Note, Plaintiff contacted DCR Mortgage [("DCR"), presumably the loan servicer] and inquired about extending, renewing, and/or refinancing the Note." (*Id.* ¶ 13). DCR agreed to waive the balloon payment and continue to accept regular monthly payments of $4635. (*Id.*). Plaintiff refers to this agreement as the "Amended Note," but there is no copy of any such document in the record. (*See id.*). Maurice Washington, the senior pastor of the church, attests that it was a oral agreement between Plaintiff and DCR. (*See* Washington Aff. ¶ 8, Feb. 18, 2010, ECF No. 1-3, at 2). Ten months later, DCR notified Plaintiff that RCH Loan Servicer ("RCH") was the new servicer. (*Id.*). Plaintiff continued to make payments to RCH for another thirty-nine months until April 2010. (*Id.* ¶ 14).

On March 25, 2010, Action Foreclosure Services, Inc. ("Action") executed a Notice of Default ("NOD") aganist the Property, purportedly as Wells Fargo's trustee under the DOT, which it recorded on March 29, 2010. (*See* NOD, Mar. 25, 2010, ECF No. 1-2, at 33). Action based the NOD on a default in the amount of $488,587.04 as of March 25, 2010. (*See id.* 1). The NOD indicated an unpaid principal balance of $464,439.50 due on January 1, 2007, plus interest, fees, and trustee's costs. (*See id.*). Because it considered the filing of the NOD to be a breach of the oral modification to the Note, Plaintiff stopped making payments. (*See* Compl. ¶¶ 17–18). On January 27, 2011, Plaintiff's attorney, Tory M. Pankopf, sent both Wells Fargo and DCR demands for binding arbitration under the Note, but neither Defendant responded. (Pankopf

Decl. ¶ 2, Feb. 18, 2011, ECF No. 1-4, at 2). The next day, Action executed a Notice of Trustee's Sale ("NOS"), which it recorded on February 1, 2011. (*See* NOS, Jan. 28, 2011, ECF No. 1-2, at 38). Action set the sale for February 24, 2011. (*See* NOS 1).

Plaintiff sued Defendants in state court for injunctive and declaratory relief on February 22, 2011. Plaintiff demands binding arbitration of the Note and DOT and an injunction against foreclosure in the meantime. (*See* Compl. ¶¶ 23–28). Although Plaintiff appears to bring no separate claim for breach of contract, it alleges that filing the NOS after ignoring its demand to arbitrate the dispute constituted a breach. (*See id.* ¶ 24). It also alleges that Action's filing of the NOD was a breach of the oral modification of the Note. (*See id.* ¶ 17). The state court issued a temporary restraining order ("TRO") on February 23, 2011, which was to last for fifteen days or until the conclusion of the preliminary injunction hearing on March 10, 2011. Defendants removed on March 7, 2011 based on diversity of citizenship. Plaintiff filed an Ex Parte Motion for Temporary Restraining Order, which the Court granted until the date of the present preliminary injunction hearing, March 15, 2011.

## II. LEGAL STANDARDS

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction

must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Ninth Circuit has explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Ninth Circuit rulings and determined that the sliding scale test remains viable when there is a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052–53 (9th Cir. 2010). This case presents some difficulty in light of *Winter* and prior Ninth Circuit cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374 (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word

"likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test, the *Winter* Court specifically emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 375, and the word modifies the success-on-the-merits prong the same way, *id.* at 374. In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 392 (Ginsburg, J., dissenting). But Justice Ginsburg, like the majority, did not address whether she believed relief could be granted when the chance of success was *less than* likely. A "lower likelihood" is still *some* likelihood. We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits. "Likely" means "having a high probability of occurring or being true." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009). The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter/Selecky* "likelihood" standard, not as being in competition with it. "Serious questions going to the merits" must mean that there is at least a reasonable probability of success on the merits. "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement of "likely."

III. ANALYSIS

The Court will grant a preliminary injunction. It appears likely that the foreclosure was statutorily proper but that the arbitration clauses in the Note and DOT are valid and that Plaintiff has made a demand to arbitrate. It is also clear that irreparable harm—the sale of real

property—will occur in the absence of a preliminary injunction. The equities tip in favor of Plaintiff. Although Wells Fargo claims it is owed almost $500,000, it is not clear it is entitled to the balloon payment, because the alleged oral modification by DCR may have waived it. The legal issues here are not yet completely clear and must be arbitrated in any case. Plaintiff will have lost all of its payments against the Property and title to the Property upon foreclosure. Also, Plaintiff's community of worship may dissolve upon foreclosure. Finally, it is in the public interest to prevent the improper sale of real property.

DCR has responded and moved to dismiss. In addition to the Complaint, Note, DOT, NOD, and NOS, DCR adduces two assignments and two substitutions. First, on October 24, 2003, Wells Fargo assigned the DOT and all documents connected to the loan to Atlantic American Mortgage Sub I ("Atlantic"). (*See* Assignment, Oct. 24, 2003, ECF No. 10-5, at 2). Next, on December 27, 2006, Atlantic assigned all interest in the DOT and loan documents to DCR. (*See* Assignment, Dec. 27, 2006, ECF No. 10-6, at 2). DCR substituted Action as trustee on March 16, 2010. (*See* Substitution, Mar. 16, 2010, ECF No. 10-7, at 2). Finally, Wells Fargo also substituted Action as trustee on January 24, 2011. (*See* Substitution, Jan. 24, 2011, ECF No. 10-7, at 9).

These documents tend to show a statutorily proper foreclosure. Wells Fargo, the original lender in 2002, properly assigned the Note, DOT, and other loan documents to Atlantic in 2003, who then properly assigned them to DCR in 2006. DCR properly substituted Action as trustee on March 16, 2010, and Action filed the NOD nine days later on March 25, 2010. The foreclosure therefore appears to have been statutorily proper.[1]

---

[1] Wells Fargo appears to have been a stranger to the loan at this point, and need not have purported to substitute Action as trustee again in 2011. Incidentally, Action was purporting to act as Wells Fargo's trustee when it filed the NOD, which appears to have been incorrect. When Action filed the NOD in 2010, it was indeed the trustee, but the beneficiary was DCR. Action's confusion over this probably did not affect its right to foreclose under the statute. DCR would have standing to object to Action's foreclosure at the behest of a past beneficiary such as Wells Fargo against DCR's will, since DCR as the present beneficiary has the right to elect foreclosure

1  The dispute must be arbitrated, however. DCR argues that the arbitration clauses exclude
2  foreclosure from their scope. The Court finds that they do not. The arbitration clause in the
3  DOT reads in relevant part:

> Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or tort, legal or equitable, now existing or hereafter arising, relating in any way to the Agreement or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving Business Banking, Community Banking, or any successor group or department of Lender.

(DOT 6). This arbitration clause is extremely thorough and shows an intent to arbitrate any type of controversy arising out of the mortgage. DCR argues, however, that another clause exempts foreclosures from arbitration. That clause reads, "The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral . . . . This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder . . . ." (DOT 7). This clause does not appear, as DCR argues, to waive the arbitration requirement upon foreclosure. Rather, it simply makes clear that foreclosure is preserved as a remedy despite the arbitration requirement. It doesn't mean that the lender can render the arbitration clause worthless to the borrower by simply initiating a foreclosure. The lender must arbitrate this dispute with Plaintiff upon demand. If the lender wins, it may still chose foreclosure as a remedy. That's all this clause seems to say, and this interpretation makes sense. An arbitration clause in a deed of trust would become illusory and one-sided if the lender could circumvent it simply by initiating foreclosure because almost every dispute over a promissory note secured by real property is likely to involve an allegation of default resulting in foreclosure.

The next clause DCR invokes reads, "[N]o Dispute shall be submitted to arbitration if the

―――――――――――

or not, but the borrower likely had no standing to object so long as Action was indeed the trustee.

Page 7 of 9

1  Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real
2  property unless the holder of the mortgage, lien or security interest specifically elects in writing
3  to proceed with the arbitration." (*Id.*). This clause appears to cover the present dispute.
4  However, the clause is substantively unconscionable, as it is one-sided. Because the entire
5  purpose of the DOT is to secure debt with real property, this exclusion clause would annihilate
6  the entire arbitration clause at the sole option of the lender or subsequent beneficiary. "Where an
7  arbitration agreement is concerned, the agreement is [substantively] unconscionable unless the
8  arbitration remedy contains a 'modicum of bilaterality.'" *D.R. Horton, Inc. v. Green*, 96 P.3d
9  1159, 1165 (Nev. 2004) (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)). A court
10 in Nevada may in equity reform a deed containing an unconscionable provision. *See Wainwright
11 v. Dunseath*, 211 P. 1104, 1006 (Nev. 1923). The Court will therefore equity sever this
12 provision form the DOT.
13     DCR also argues that the alleged oral modification is within the statute of frauds and fails
14 thereunder. The Court need not examine this argument directly, because the dispute should be
15 arbitrated. However, the alleged oral modification appears to be within the statute of frauds as
16 DCR argues, because the Note as orally amended could not be repaid within one year at the
17 agreed monthly rate, and the agreement therefore could not by its terms be completed within one
18 year. *See* Nev. Rev. Stat. § 111.220(1). Indefinite employment contracts are outside of the
19 statute of frauds because they may be terminated at will, *see, e.g., Atwell v. Sw. Sec.*, 820 P.2d
20 766, 769 (Nev. 1991), but contracts to repay debt are not terminable at will by either party; they
21 terminate only when the debt is satisfied. Still, Plaintiff may have a claim for promissory
22 estoppel to be adjudicated by the arbitrator.

### CONCLUSION

24  IT IS HEREBY ORDERED that the Temporary Restraining Order is EXTENDED until
25 5:00 p.m. on March 23, 2011.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 11) is DENIED.

IT IS FURTHER ORDERED that the parties are ORDERED to binding arbitration as provided under the Note and Deed of Trust. Plaintiff must initiate arbitration within 30 days.

IT IS FURTHER ORDERED that within seven (7) days counsel for Defendants will submit, after consultation with counsel for Plaintiff, a proposed Preliminary Injunction order, as discussed at oral argument.

IT IS SO ORDERED.

Dated this 15th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge