# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| CENTER OF HOPE CHRISTIAN FELLOWSHIP, LOCAL, CHURCH OF GOD IN CHRIST, | ) ) ) ) | |
| Plaintiff, | ) ) | 3:11-cv-00173-RCJ-VPC |
| vs. | ) ) | **ORDER** |
| WELLS FARGO BANK NEVADA, N.A. et al., | ) ) | |
| Defendants. | ) ) | |

This case arises out of the foreclosure of a church's mortgage. The Court granted a preliminary injunction and denied a motion to dismiss in early 2011. Pending before the Court are motions for summary judgment and to expunge the lis pendens. For the reasons given herein, the Court grants those motions. Plaintiff has asked the Court to order Defendants to show cause why they should not be held in contempt for failing to arbitrate, but it is Plaintiff who was ordered to initiate arbitration and whose dilatory tactics were designed to avoid arbitration. Accordingly, the Court denies that motion.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Center of Hope Christian Fellowship, Local, Church of God in Christ gave lender Wells Fargo Bank Nevada, N.A. ("Wells Fargo") a $500,000 promissory note (the "Note"), secured by a deed of trust ("DOT"), to purchase real property at 1327 Pyramid Way,

1  Sparks, NV 89431 (the "Property"). (*See* Note 1, Feb. 21, 2002, ECF No. 1-2, at 12; DOT, Feb.
2  21, 2002, ECF No. 1-2, at 22).  The Note was a fifty-eight-month, fixed-rate note at 7.5%, with
3  fifty-seven regular monthly payments of $4635 and a final balloon payment estimated at
4  $403,757.59 due on January 1, 2007. (*See* Note 1).  Any dispute over the Note is arbitrable on
5  demand of either party. (*See* Note 3).  The trustee under the DOT was American Securities
6  Company of Nevada ("ASCN"). (DOT 1).  Any dispute over the DOT is also arbitrable on
7  demand of either party. (*See* DOT 6).
8         The actual amount due on January 1, 2007 was $399,463.09, slightly less than
9  anticipated. (Compl. ¶ 12, Feb. 22, 2011, ECF No. 1-1, at 2).  It is not clear if or when Plaintiff
10 defaulted on the original Note, but Plaintiff alleges, "[p]rior to the payment of the balloon
11 payment [which was due January 1, 2007] and pursuant to the Note, Plaintiff contacted DCR
12 Mortgage [("DCR"), presumably the loan servicer] and inquired about extending, renewing,
13 and/or refinancing the Note." (*Id.* ¶ 13).  DCR agreed to waive the balloon payment and continue
14 to accept regular monthly payments of $4635. (*Id.*).  Plaintiff refers to this agreement as the
15 "Amended Note," but there is no copy of any such document in the record. (*See id.*).  Maurice
16 Washington, the senior pastor of the church, attests that it was a verbal agreement between
17 Plaintiff and DCR. (*See* Washington Aff. ¶ 8, Feb. 18, 2010, ECF No. 1-3, at 2).  Ten months
18 later, DCR notified Plaintiff that RCH Loan Servicer ("RCH") was the new servicer. (*Id.*).
19 Plaintiff continued to make payments to RCH for another thirty-nine months, until April 2010.
20 (*Id.* ¶ 14).
21        On March 25, 2010, Action Foreclosure Services, Inc. ("Action") executed a Notice of
22 Default ("NOD") on the Property, purportedly as Wells Fargo's trustee under the DOT, which it
23 recorded on March 29, 2010. (*See* NOD, Mar. 25, 2010, ECF No. 1-2, at 33).  Action based the
24 NOD on a default in the amount of $488,587.04 as of March 25, 2010. (*See id.* 1).  The NOD
25 indicated an unpaid principal balance of $464,439.50 due on January 1, 2007, plus interest, fees,

and trustee's costs. (*See id.*). Because it considered the filing of the NOD to be a breach of the verbal modification to the Note, Plaintiff stopped making payments. (*See* Compl. ¶¶ 17–18). On January 27, 2011, Plaintiff's attorney, Tory M. Pankopf, sent both Wells Fargo and DCR demands for binding arbitration under the Note, but neither Defendant responded. (Pankopf Decl. ¶ 2, Feb. 18, 2011, ECF No. 1-4, at 2). The next day, Action executed a Notice of Trustee's Sale ("NOS"), which it recorded on February 1, 2011. (*See* NOS, Jan. 28, 2011, ECF No. 1-2, at 38). Action set the sale for February 24, 2011. (*See* NOS 1).

Plaintiff sued Defendants in state court for injunctive and declaratory relief. Defendants removed based on diversity of citizenship. Plaintiff filed an Ex Parte Motion for Temporary Restraining Order, which the Court granted, later extending the order, denying a motion to dismiss, and then issuing a preliminary injunction. The Court ruled that the Note and DOT were arbitrable, and that although the foreclosure appeared statutorily proper, Plaintiff had demanded arbitration, and Defendants had not complied. The Court also noted that there was a factual issue over the enforceability of a balloon payment under the Note because of a possible oral waiver, although that alleged oral waiver was probably ineffective under the statute of frauds, but that an arbitrator would have to sort out the issue. Defendants have now moved for summary judgment and to expunge the lis pendens, and Plaintiff has asked the Court to order Defendants to show cause why they should not be held in contempt.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

1  At the summary judgment stage, a court's function is not to weigh the evidence and
2 determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
3 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are
4 to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely
5 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

6  **III.   ANALYSIS**

7  Defendants note that the Court issued a preliminary injunction "expressly conditioned
8 upon Plaintiff's posting of bond or other security in the sum of $90,000 with this Court no later
9 than 5:00 p.m. on April 15, 2011," and that the injunction would automatically dissolve by its
10 own terms at 12:01 a.m. on April 18, 2011 without further judicial action should Plaintiff fail to
11 do so. (*See* Prelim. Inj. Order ¶ 2, ECF No. 21).  The Court later extended the deadline to May 6,
12 2011. (*See* Order, ECF No. 24).  Plaintiff posted no bond or other security.  The Court later
13 expressly recognized in an order releasing the $1000 bond posted in state court that the
14 preliminary injunction had expired on May 9, 2011 due to Plaintiff's failure to post bond. (*See*
15 order, ECF No. 29).  Even if bond had been timely posted, the injunction would have dissolved
16 by its own terms no later than September 15, 2011. (*See* Prelim. Inj. Order ¶ 3, ECF No. 21).

17  Defendant notes that rather than initiate arbitration as ordered by the Court, Plaintiff filed
18 for Chapter 11 bankruptcy protection just hours before the preliminary injunction expired by its
19 own terms at midnight on May 9, 2011, and that the bankruptcy petition was dismissed as
20 improper.  At the dismissal hearing, Judge Zive admonished Plaintiff:

> Mr. Pankopf said that they would start the arbitration process within 30 days.  That has not happened.
>
> . . . .
>
> And there's no bar pursuant to § 362 of the Code, or any other bar that I'm aware of, that would preclude Center of Hope Christian from seeking to arbitrate the amount of interest that should have been paid if it wanted to do so.
>
> . . . .

> But Judge Jones, as I noted, provided the Center of Hope Christian with the ability to make payments and to post a bond. It did neither. . . . Instead what it did was filed the petition on May 9th. It is a totally inappropriate use of the Bankruptcy Code to file a petition to escape a bonding requirement no matter what context.

(Hr'g Tr. 4:10–12, 4:14–18, 6:23–7:4, Jan. 17, 2012, ECF No. 34-2). Judge Zive then noted that it was impossible for Plaintiff to make the payments with its approximately $230 per month income, that there was only a single creditor who undoubtedly would not vote to confirm any plan Plaintiff proposed, and that cramdown was impossible under the code because there was no second creditor and hence could be no impaired creditor to vote to approve the plan against the single creditor's will. Judge Zive noted that there was no hope of reorganization and that Plaintiff had failed for eight months to even file any proposed plan of reorganization, anyway. After recounting the proceedings before the district court, Judge Zive commented further, "people have bent over backwards to assist the Center of Hope Christian and it has failed to satisfy any of its obligations." (*Id.* 18:15–16). Turning back to the code, he noted, "There was no purpose to this bankruptcy, and there's no way possible of getting this bankruptcy plan confirmed. . . . There has been enough delay." (*Id.* 19:16–18, 20).

Finally, Defendants note that the trustee has already conducted a trustee's sale, where the creditor purchased the property via a credit bid.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 31) and the Motion to Expunge the Lis Pendens (ECF No. 33) are GRANTED.

IT IS FURTHER ORDERED that the Motion for Order to Show Cause (ECF No. 39) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 26th day of November, 2012.

_____
ROBERT C. JONES
United States District Judge